UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| LARRY PARKS and SHEILA PARKS, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 11-64-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| STATE FARM FIRE AND | ) | **AND ORDER** |
| CASUALTY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On July 2, 2010, plaintiffs Larry and Sheila Parks's house burned down under suspicious circumstances. From the ashes of that fire, this lawsuit was born. The plaintiffs' insurer, defendant State Farm, voided their policy on the grounds that the plaintiffs deliberately destroyed their own house and intentionally misrepresented a number of facts during the subsequent investigation. The plaintiffs sued the defendant, alleging that they were eligible to recover under the policy and that the defendant voided their contract in bad faith. The parties have now filed dueling motions for summary judgment. Because no reasonable jury could disagree over whether State Farm was entitled to void the policy, the plaintiffs' motion is denied and the defendant's motion is granted.

## BACKGROUND

The plaintiffs are correct when they admit that the circumstances surrounding the destruction of their house "don't look good." R. 54-2 at 1. Even taking the plaintiffs' version of the facts as true, the timeline of events presents a curious picture of financial crisis and ungrounded optimism. In October 2009, the plaintiffs purchased their house. R. 47-3 at 14.

As part of the purchase agreement, they bought homeowners insurance from State Farm with a policy limit of $65,300 for the house and corresponding personal property coverage of $48,975.  R. 53-1 at 3.

Mr. Parks alleges that he always intended to increase the coverage but at the time the plaintiffs purchased the house he could not afford to do so.  R. 46-4 at 1; R. 54-5 at 2; R. 54-6 at 1–2.  Neither party disputes that the plaintiffs entered into home ownership in dire financial straits. Both Mr. and Mrs. Parks were unemployed and were living on a combined income of $1328 in Supplemental Security Income and food stamps.  R. 38 at 47–48.

Unfortunately, shortly after purchase, the plaintiffs' financial picture became bleak. Power bills rose precipitously in the winter of 2010, R. 47-1 at 7, but their income stayed the same.  And another source of finances dried up after the passing of Mrs. Parks's mother. R. 46-1 at 4.  Nonetheless, the plaintiffs decided to significantly raise the coverage limit on their insurance policy to the full replacement cost of $204,000 for the home and $153,000 for personal property.  R. 47-1 at 5; R. 53-1 at 6.  On May 11, 2010, they formally requested the increase in coverage.  R. 46-21 at 4; R. 46-1 at 6–7.  On that same day, the utility company disconnected their electricity for nonpayment and they were forced to abandon their home. R. 46-21 at 4; R. 47-1 at 7–8.

While staying with relatives, the plaintiffs continued to aggressively pursue increased insurance coverage for a home they no longer occupied and to which they could not afford to return.  R. 46-1 at 8; R. 46-21 at 4.  They did not inform the insurance company of any of these facts, R. 46-1 at 8, so in early June the insurance company made the increase effective. R. 46-21 at 4.  On July 1, 2010, the plaintiffs traveled to the State Farm agent's office and

2

paid their first premium on the new policy.  *Id.*  In the early hours of July 2, 2010, their house burned down.  R. 46-1 at 9.

Because of the unusual circumstances of the fire, the plaintiffs' subsequent claim was submitted to the State Farm Special Investigation Unit.  *Id.* at 10. State Farm employees conducted numerous interviews during the course of the investigation and the Unit hired an investigator to do a cause and origin investigation on the fire. The plaintiffs also submitted personal property inventory forms.  *Id.* at 11.  Based on perceived inconsistencies in these forms and in the plaintiffs' statements, State Farm requested and the plaintiffs complied with an examination under oath and submission of new inventory forms.  *Id.* at 12.

At the conclusion of the investigation, State Farm determined that sufficient circumstantial evidence existed showing the plaintiffs deliberately set the fire.  R. 46-22 at 1. State Farm also concluded that the plaintiffs intentionally made material misrepresentations to State Farm that voided the policy under its Concealment and Fraud provision.  R. 46-1 at 13.  State Farm sent its decision denying the claim to the plaintiffs on March 24, 2011. R. 46-22.

On March 31, 2011, the plaintiffs filed suit in the Pike Circuit Court to recover $33,831.23 for the actual cash value of the house and $65,322.06 for the value of its contents.  R. 47-1 at 13.  They also allege that State Farm denied their claim in bad faith. R. 1-10 at 3.  The defendants removed to federal court on May 2, 2011.  R. 1.

## ANALYSIS

The parties have now filed competing motions for summary judgment.   R. 46; R. 47. The plaintiffs believe that no reasonable juror could find that they intentionally burned down

their house in violation of the Intentional Acts Clause.  Fighting fire with fire, State Farm also requests summary judgment and argues that the plaintiffs violated the Concealment and Fraud Clause of their contract, voiding the policy and making a determination about the cause of the fire unnecessary.  State Farm also requests summary judgment on the plaintiffs' bad faith claim.  Because no genuine issue remains for a jury, State Farm is entitled to summary judgment on both claims.

## 1.  The "Concealment and Fraud" Clause

There appear to be very few important points on which the plaintiffs have not contradicted themselves during State Farm's investigation of their claim.  Those contradictions are critical because the insurance policy's Concealment and Fraud Clause voids the policy where the policyholder intentionally misrepresents a material fact.  R. 46-2 at 32; *see also Lewis v. Allstate Ins. Co*., No. 6:09-CV-365-HAI, 2011 WL 1885535, at *5 (E.D. Ky. May 18, 2011) (describing a similar policy).

Though State Farm is entitled to summary judgment, this case is not as clear as it believes. Unlike the plaintiffs that State Farm points to in *Hardin* and *Baymon*, the Parkses either deny that their statements were false or deny that the misrepresentations were intentional.  *See, e.g.*, *Home Ins. Co. v. Hardin*, 528 S.W.2d 723, 725 (Ky. 1975) (noting that it is undisputed that the plaintiff included numerous nonexistent items in a sworn proof of loss); *Baymon v. State Farm Ins. Co*., No. CIV.A. 403CV184M, 2006 WL 2850262, at *2 (W.D. Ky. Oct. 2, 2006) (noting that the plaintiffs admitted to knowing that the statements made to the investigator were false).  For a number of the plaintiffs' misrepresentations, there is at least some evidence supporting that contention.  *See Anderson v. Liberty Lobby, Inc*.,

4

477 U.S. 242, 255 (1986) (noting that trial courts should act with caution when granting summary judgment).   A jury could believe some of the plaintiffs' misstatements were genuinely inadvertent—and therefore not in violation of the Concealment and Fraud Clause of their insurance contract. But no reasonable jury could believe that the plaintiffs simply misstated the worth of their property on their claim forms.

While improbable, the plaintiffs might be able to convince a reasonable jury that Mrs. Parks forgot the date when she formally applied for increased insurance. R. 54-7 (stating that initial call was in January); R. 54-8 (May). A reasonable—though extremely credulous—juror might also credit Mr. Parks's statements over those of State Farm's affiants that he did not remove personal photographs from his home before it burned down, that he couldn't remember where he was the day before the fire, and that he never spoke to his relatives about having the power turned on in their names.  R. 52-1 at 10, 12-13.  That same trusting juror might credit the plaintiffs' improbably optimistic statements that when they abandoned their home they planned to return soon and that they simply "didn't think" to tell State Farm that they could no longer afford to stay in the house for which they wanted to dramatically increase coverage.  R. 40 at 164.  And plaintiffs' might reasonably dispute their intent in making false and contradictory statements about their electricity bill.  R. 54 at 8; R. 41 at 25; R. 46-23 at 2; R. 54-18 at 1; R. 54-19 at 2. Fortunately, the Court need not decide whether a reasonable juror could believe all of these claims.  *See Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011).

The plaintiffs' assertions of ignorance go from improbable to incredible when viewed in light of the uncontested evidence that they intentionally lied about their personal property

loss.  Mrs. Parks submitted two personal property inventory forms that she now admits were false.  R. 40 at 227–32 (admitting that the second inventory form was not accurate); R. 46-25 at 4–8 (admitting that the first inventory form was not accurate).  When questioned about the first set of forms, Mrs. Parks admitted that it listed purchases far in excess of their income.  She explained that she mistakenly listed gifts as purchases, accidentally included some items that came with the house, and misstated the date of acquisition for some items.  *Id.*  Mrs. Parks was given a second form, but upon review this supplemental form still included purchases in excess of income.  When questioned about the form, Mrs. Parks contends that despite having been specifically told to correctly mark gifted items, she "didn't think" to do so when filling out the second set of forms.  R. 40 at 229.  The plaintiffs do not contest that both sets of forms were inaccurate. R. 40 at 227–32.  They do, however, maintain that the misrepresentations were unintentional, and, thus, that Mrs. Parks was not actively concealing anything or perpetrating a fraud. R. 52-1 at 13.

But while the plaintiffs may be able to rationalize some of the inaccuracies on their loss forms, others cannot be explained away so easily.  Among other things, Mrs. Parks's first and second set of claim forms list the property they purchased before 2001 as in excess of $30,000.  R. 46-18; R. 46-19.  Yet it is undisputed that in 2001 the plaintiffs filed for bankruptcy and claimed in a sworn-to filing that they owned only $1200 worth of personal property.  R. 46-26.  The plaintiffs utterly failed to respond to this evidence—nowhere in their three briefs do they offer any sort of explanation for the thirty-thousand dollar difference between their bankruptcy filings and claim forms.

This evidence meets State Farm's burden to demonstrate that no reasonable juror could believe the plaintiffs on the current record. *Timmer v. Michigan Dept. of Commerce*, 104 F.3d 833, 843 (6th Cir. 1997) (describing the summary judgment standard where the movant bears burden of proof at trial). While the Court must draw all reasonable inferences in favor of the plaintiffs, it need not draw *unreasonable* inferences. *See Audi AG v. D'Amato*, 469 F.3d 534, 545 (6th Cir. 2006); *see also Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (noting that on summary judgment, courts are compelled to draw all inferences in favor of the nonmoving party "to the *extent supportable by the record*"). And the inference that these impoverished plaintiffs somehow misremembered the fact that they did not own approximately thirty-thousand dollars of property is, indeed, an unreasonable one.

The plaintiffs have failed to demonstrate a genuine issue for trial. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (non-moving party survives a motion for summary judgment only by establishing a "genuine issue of material fact"). Their assertion that "[t]here is simply no evidence . . . that any statement said to be false in a [personal property claim form] was intentionally made," R. 52-1 at 15, offers only "metaphysical doubt as to the material facts"—an insufficient effort to escape summary judgment. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586–87; *see also Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) ("[T]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." (internal quotation omitted)). The plaintiffs' policy is therefore void under the Concealment and Fraud Clause. The Court need not decide whether the plaintiffs were entitled to summary judgment on the Intentional Acts Clause.

7

**2. The Bad Faith Claim**

Prospective plaintiffs would do well to remember that not every disagreement is evidence of bad faith, and that the outrageousness of a prospective defendant's conduct does not turn on how strongly the prospective plaintiff believes he is right. Here, the plaintiffs allege that State Farm's refusal to pay their claim was made in bad faith. R. 3-1 at 2–3 (Compl. ¶ 2-3). Under Kentucky law, the test for bad faith asks whether the insurer (1) is obligated to pay the claim; (2) has a reasonable basis for denying the claim, and, if not, (3) knew or acted in reckless disregard of the lack of reasonable basis to deny the claim. *See Wittmer v. Jones*, 864 S.W.2d 885, at 890 (Ky. 1993) (quotation omitted). Under this standard, an insurer may challenge a claim if it is "debatable" on the law or facts, even if a court eventually determines that the insurance contract is not void. *Id.*

State Farm has compiled a textbook case of arson. Plaintiffs wish to throw away that book, and, instead, argue that they raised their coverage at State Farm's inducement and that State Farm's subsequent decision to void their policy was therefore made in bad faith. R. 52-1 at 17. This argument is without evidence in the record and is actually contrary to other arguments presented by the plaintiffs. R. 46-4 at 1; R. 54-5 at 2; R. 54-6 at 1–2. And there is substantial evidence that State Farm justifiably concluded that plaintiffs had both motive and opportunity to destroy their house. Mrs. Parks herself admitted that the circumstances of the fire appear incriminating. R. 54-2 at 1. State Farm's arson investigator reported that the house burned down as the result of an intentional fire, lit from the inside of the house, with no signs of forced entry. R. 46-17 at 1, R. 53-1 at 10. The plaintiffs were the only people with keys to their house. *Id.* Fanning the flames of suspicion, State Farm's investigation

also revealed significant evidence of the plaintiffs' strong financial motive to destroy their house.  R. 46-1 at 2-13.  The parties dispute whether the plaintiffs had the opportunity to burn the house, but a reasonable juror could certainly discount the plaintiffs' alibis—particularly given Larry Parks's contradictory statements about his location on the day before the fire.  R. 46-1 at 21-22.  If there is a fire under all this smoke there is plenty of evidence that it is one of the plaintiffs' own making.  No reasonable juror could conclude that State Farm did not have a reasonable basis to deny the plaintiffs' claim.

Plaintiffs' also argue that State Farm's denial letter did not adequately advise them of the legal basis for State Farm's denial.  R. 52-1 at 19-20.  However, the letter clearly stated that the policy was voided because the plaintiffs' violated the Intentional Acts and Concealment and Fraud Clauses.  R. 54-24. Plaintiffs' argument that the letter did not state that the *plaintiffs'* intentional act voided the policy, R. 52-1 at 20, is incredible in light of quoted language in the policy limiting the intentional acts provision to "any person insured under this policy."  R. 54-24 at 1.

Plaintiffs' also allege that during the litigation of this claim they were not adequately advised of the factual basis for State Farm's denial, in violation of Kentucky Statute § 304.12-230.  R. 52-1 at 19–22.  However, State Farm provided the plaintiffs with a complete claim file and indicated specific documents that directly provided the factual basis for its decision to void the plaintiffs' policy.  R. 54-26; R. 54-27.

9

## CONCLUSION

It is therefore **ORDERED** that plaintiffs' motion for summary judgment, R. 47, is

**DENIED**.  The defendant's motion for summary judgment, R. 46, is **GRANTED**.

This the 4th day of September, 2012.

**Signed By:**

_**Amul R. Thapar**_

**United States District Judge**